IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 8:06CR370 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | MEMORANDUM AND ORDER |
| HECTOR MANUEL, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on defendant's objection, Filing No.30, to the report and recommendation (R&R) of the magistrate, Filing No. 27. Defendant filed a motion to suppress, Filing No. 18. The magistrate judge recommended that the defendant's motion to suppress be denied. Pursuant to 28 U.S.C. § 636(b)(1)(A), the court has conducted a *de novo* determination of those portions of the R&R to which the defendant objects. *United States v. Lothridge*, 324 F. 3d 599, 600-01 (8th Cir. 2003). The court has carefully reviewed the entire record including the transcript of the suppression hearing, Filing No. 2, the briefs, and the relevant caselaw. The court accepts the facts set out in the R&R and they need not be repeated here, except to the extent necessary to this court's findings. The court finds the objections to the report and recommendation are overruled.

**Background**

On September 12, 2006, the Blair Police Department and the Washington County Sheriff's Office conducted an undercover drug investigation. A confidential informant told Investigator Standard that a person by the name of "Coco," later identified as co-defendant Alvarc Velasco (hereinafter referred to as Coco), had a half ounce of methamphetamine for sale for $500.00. The CI received a monitoring device from law enforcement and then

called Coco requesting to purchase the methamphetamine. Coco and the defendant arrived at the CI's residence in a red Honda driven by Coco. They stayed inside the CI's house for approximately 45 minutes where the purchase of methamphetamine occurred. Investigator Sean Standard of the Blair Police Department testified that parts of the conversation were in Spanish, and he did not know what was said in that regard. Coco then said he could obtain more methamphetamine which would cost about $4,000.00.

There is no testimony in the record as to the defendant's specific statements during these discussions. However, Investigator Standard testified that it was his understanding from the CI that both Coco and the defendant participated in the tape-recorded conversation with the CI, and that both Coco and the defendant were present during the drug deal. Filing No. 29, Tr. of suppression hearing, page 10, lines 3-6 and 11-13; page 24, line 20 to page 25, line 7; page 25, lines 12-19.

Thereafter, Coco and defendant left and drove to a storage lot salvage yard. The CI called Coco again and asked when he would be arriving for the second drug sale. Coco and the defendant then drove toward Blair, Nebraska. Law enforcement tailed the red Honda and ran the plates through the central office. Law enforcement discovered that the license plates did not match the red Honda. The officers then conducted a traffic stop of the red Honda and its occupants. Officer Standard testified that they wanted to make the stop at that time to help protect the CI. Coco was driving the car at the time of the stop. The officers brought in a drug dog, but the dog refused to correctly conduct a sniff search. The officers took the red Honda to headquarters, along with the defendant and Coco, and then filed a request for a search warrant to search the car, Coco, and the defendant. Prior to requesting the warrant, pictures were taken of both the defendant and Coco and shown to the CI. The CI identified both Coco and defendant as those persons who were at his

house. A state court judge issued the warrant, and during the search 148 grams of methamphetamine were found in a CD case inside the car. Coco was searched and the officers discovered drug ledgers, phone numbers, a cell phone, the $500.00 buy money, and $152.00. Defendant's person was searched, and no evidence was obtained.

**Discussion**

In his motion to suppress, defendant argues that there was not one iota of evidence tying him to this drug deal. It is true that there were no specific statements attributable to him at the time of the sale, there were no statements attributable to him about the second sale, he did not drive the vehicle, he did not call or receive calls from the CI, and no evidence of drugs or related evidence were found when defendant was searched by law enforcement. Defendant argues that his presence or association with a criminal cannot produce probable cause nor does being at a "location known to be frequently involved in narcotic sales or other crimes." *United States v. Everroad*, 704 F.2d 403, 406 (8th Cir. 1983). Consequently, defendant argues that all evidence found thereafter is the fruit of an initial and illegal arrest. *Wong Sun v. United States*, 371 U.S. 471 (1963). Absent the illegal arrest, argues defendant, there is no information to link him or his name with the alleged buy.

The magistrate determined that these issues go to the weight of the evidence and should be decided at trial. He did not believe they were appropriately raised in a motion to suppress. The magistrate further found that there was probable cause to pull the red Honda over for two reasons. First, the officers had probable cause to believe that the occupants had just committed a crime and were in the process of committing another one.

Second, the officers determined that the tags on the red Honda were not valid for that vehicle.

First, the court finds that the initial stop of the vehicle was valid because the police had probable cause or reasonable suspicion to believe a traffic violation had occurred. *United States v. Herrera-Gonzalez*, 474 F.3d 1105, (8th Cir. 2007). The actual motivations of the officer and his subjective intentions are irrelevant. *Whren v. United States*, 517 U.S. 806, 813 (1996). The court further concludes that the officers had reason to believe that a crime had occurred and was still occurring. *See Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979); *Terry v. Ohio*, 392 U.S. 1 (1968); *United States v. Bobo*, 994 F.2d 524, 527 (8th Cir. 1993). The officers (1) had Coco and the defendant under surveillance as they entered the residence of the CI; (2) had Coco and the defendant under surveillance during the purchase of the methamphetamine; (3) observed as Coco and defendant exited the house; and (4) watched Coco and the defendant as they drove to the salvage center and again as they drove towards Blair, Nebraska, to meet with the CI for a second buy. The court also notes, that while no specific comments have been testified to, Officer Standard did testify as set forth herein that the CI identified the defendant as being present during the drug transaction and as making statements during the drug buy. The court agrees with the magistrate's finding that whether the government can prove that this defendant was involved in the drug deal is a question for trial. The court further finds that no grounds exist to support the defendant's motion to suppress in this case.

THEREFORE, IT IS ORDERED that:

1. The motion to suppress, Filing No. 18, is denied;

2. Defendant's objections, Filing No. 30, are overruled;

3.  The magistrate's report and recommendation, Filing No. 27, is adopted in its entirety.

DATED this 12th day of March, 2007.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge